**ACTION CORPORATION, Plaintiff**

v.

**TOSHIBA AMERICA CONSUMER PRODUCTS, INC., Toshiba America, Inc., and Toshiba Corporation, Defendants.**

**Civil No. 97–1134 (PG).**

United States District Court,
Puerto Rico.

Aug. 14, 1997.

Luis Barceló–Gener, San Juan, P.R., for Plaintiff.

Manuel Fernández–Bared, San Juan, P.R., for Defendants.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

#### I. Background

The plaintiff brings this action under the Puerto Rico Dealer's Act of 1964, P.R. Laws Ann. title 10, § 278 *et seq.* (Act 75). For the past eighteen years, Plaintiff has been the exclusive distributor (dealer) of Toshiba products in Puerto Rico. Defendant Toshiba America Consumer Products, Inc. (TACP), a principal as defined under Act 75, has maintained access to Puerto Rican markets for its products through Plaintiff dealer. Plaintiff alleges that Defendants, on or about February 1, 1994, and continuously thereafter, engaged in a pattern of business that infringed upon Plaintiff's rights as defined and protected under Act 75. Specifically, Plaintiff alleges that Defendants violated Act 75 by developing similar distributorship-type relationships with other companies both located and doing business in Puerto Rico, thereby circumventing Plaintiff's exclusive distributorship rights and causing economic harm to it. Presently before the Court is Defendants TACP and Toshiba America, Inc.'s (TAI), Motion to Dismiss and/or for Summary Judgment.

#### II. Discussion

The Puerto Rico Dealer's Act is an exercise by the Commonwealth of Puerto Rico of its police power to curb widespread economic abuse of dealers by powerful manufacturers. The Purpose of the Act "is to prevent a principal [from taking] over a profitable venture after the local distributor has conquered a market and clientele through his entrepreneurial energy." *Cobos Liccia v. DeJean Packing Co., Inc.*, 89 JTS 104 at 7255 (the Court's translation). The Act prohibits a supplier from unilaterally terminating a dealership without just cause.

Defendants contend that plaintiff erred in naming TAI as codefendant, for TAI has since 1989 acted only as a holding company for several Toshiba companies and maintains no legal ties whatsoever to Plaintiff. Plaintiff's claim as to TAI should therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(2) and (6) for lack of personal jurisdiction.

Defendants further argue that Plaintiff improperly filed suit in the United States District Court for the District of Puerto Rico in breach of the parties' distributorship agreement's ("Agreement") forum selection clause. Therefore, the United States District Court for the District of Puerto Rico is not the proper venue for adjudication of any disputes arising out of the Agreement because it is a court of the United States of America, not of the Commonwealth of Puerto Rico. Defendant states that, under the Agreement's forum selection clause, the local Commonwealth courts are the only courts with jurisdiction Civ. No. 97–1134(PG) 3. over disputes between the parties. Plaintiff disagrees that the forum selection clause prohibits parties from filing a complaint in the U.S. District Court for the District of Puerto Rico. Plaintiff contends that Defendants' interpretation of the forum selection clause is highly restrictive and does not recognize the clause as permissive. The permissive forum selection clause merely requests that a court hear a case and does not require that a dispute be adjudged in a particular forum unless restrictive language is included.

## A. In Personam Jurisdiction over Toshiba of America, Inc.

■ Defendants challenge the Court's exercise of personal jurisdiction over TAI. The analysis of personal jurisdiction involves evaluations under Puerto Rico's long-arm statute and under the 14th Amendment constitutional standard of "minimum contacts". *Sawtelle v. Farrell,* 70 F.3d 1381, 1387 (1st Cir.1995). Whenever a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden of proving that the forum state maintains jurisdiction over the defendant. *Id.; Ticketmaster–New York Inc. v. Alioto,* 26 F.3d 201, 207 n. 9 (1st Cir.1994). The court

is permitted " 'to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.' " *Foster-Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995) (quoting *Boit v. Gar-Tec Prods., Inc.,* 967 F.2d 671, 675 (Vt Cir.1992)). However, "the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." *Id.*

### 1. The Puerto Rico Long Arm Statute

Puerto Rico's long arm statute provides, in pertinent part:

4.7 Service on a person not domiciled in Puerto Rico (a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent.

P.R. Laws Ann. title 32, app. III, R. 4.7(a)(1) (1983).

The statute has been construed as coextensive with the Due Process Clause and extends personal jurisdiction within the constraints of the federal Constitution. *Pritzker v. Yari,* 42 F.3d 53, 60 (1st Cir.1994); *Miranda–Rivera v. Bank One,* 145 F.R.D. 614, 617–18 (D.P.R.1993). Presently, the long arm statute must be applied to determine whether the Court can exercise personal jurisdiction over TAI.

In their Motion to Dismiss, Defendants explained that TAI is a legally distinct entity from TACP and an "old TAI" which was dissolved in 1989. In support, Defendants submitted an affidavit from John A. Anderson, Jr., senior vice-president and general counsel of TAI, explaining that the "old TAI" was incorporated in New York State in 1965 and dissolved in 1989 near the time of the formation of TACP. TACP was assigned all the rights and obligations of that "old TAI." A "new TAI" was formed in 1989 pursuant to the laws of delaware and acts as a holding company for several Toshiba corporations in the United States. Furthermore, the affidavit stipulates that the "new TAI" does not conduct business in Puerto Rico.

The "new TAI" does not have licenses to do business, maintains no agents or representatives, does not own property or operate retail outlets, and maintains no deposits in financial institutions in Puerto Rico.

Plaintiff's Opposition to the Motion to Dismiss fails to refute defendants' contention that the Court lacks personal jurisdiction over TAI. Plaintiff does not offer evidence suggesting the Court maintains personal jurisdiction over TAI within the constraints of Puerto Rico's long arm statute. Accordingly, the Court finds there is a dearth of evidence to suggest Defendant transacted business in Puerto Rico through which a claim or cause of action could arise permitting the Court to exercise jurisdiction through Puerto Rico's long arm statute.

### 2. Constitutional Standard for the Exercise of Personal Jurisdiction

"The due process clause of the Constitution requires that before a defendant can be brought into a forum's court, two conditions must be met. First, the defendant must have purposefully established minimum contacts' with the forum such that he can reasonably anticipate being haled into that forum's court. Second, if such contacts exist, the exercise of personal jurisdiction over the defendant must comport with 'fair play and substantial justice.'" *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.* 894 F.2d 9, 11 (1st Cir. 1990) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 476, 105 S.Ct. 2174, 2183, 2184, 85 L.Ed.2d 528 (1985)) (citations omitted)

The plaintiff does not provide evidence beyond the Complaint and Opposition Motion which together simply suggest in a conclusory manner that the Court maintains personal jurisdiction over Defendant TAI. Plaintiff rests upon the pleadings without proffering evidence even to hint that the "new TAI" maintains the constitutionally required "minimum contacts" within the forum. The failure of the first inquiry into personal jurisdiction

warrants no further analysis into whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160.

Accordingly, the Court finds that TAI does not meet the "minimum contacts" standard allowing the District Court to exercise personal jurisdiction over Defendant. The Court is also unable to exercise personal jurisdiction over TAI through Puerto Rico's long arm statute. The present action does not arise out of any business transacted in Puerto Rico by TAI either personally or through an agent. The Agreement involves the Plaintiff and Defendant TACP, who are the signatories to the dealership contract. The dispute lies between these parties and does not involve TAI such as to permit the exercise of personal jurisdiction by the Court.

### B. The Forum Selection Clause

Defendants move for dismissal based upon Rule 12(b)(6) of the Federal Rules of Civil Procedure, failure to state a claim upon which relief can be granted.[1] The contract between the parties is the Agreement signed in 1994 that includes a forum selection clause as provision 20, which reads:

> **GOVERNING LAW.** This Agreement and performance hereunder shall in all respects be governed by the substantive laws of the Commonwealth of Puerto Rico. The parties voluntarily submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico for the settlement of any disputes, controversies, claims or differences arising out of or relating to this Agreement or the subject matter hereof, including but not limited to purchase orders and transactions pursuant to this agreement.

Defendant contends the controlling issue involves enforcement of the forum selection clause, which requires that disputes be heard in courts of the Commonwealth of Puerto

---

[1]. The circuits disagree on whether a motion to dismiss based on a forum-selection clause is more properly enforced under Rule 12(b)(6) or Rule 12(b)(3), improper venue. *Stamm v. Barclays Bank of New York,* 960 F.Supp. 724, 730 (S.D.N.Y.1997). The First Circuit has held that such dismissals are founded on Rule 12(b)(6). *Lambert v. Kysar,* 983 F.2d 1110, 1112 n. 1 (1st Cir.1993).

Rico. Accordingly, Defendant argues, this Court, as a court of the United States, is not a court of the Commonwealth. Thus, the parties are restricted from presenting any claims to the District Court pursuant to the forum selection clause.

Defendant presents supporting case law for the enforcement of forum selection clauses. Enforcement of the forum selection clause does not need to be addressed at length as the federal courts have long enforced such clauses. In *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972), the Supreme Court held that "such [forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *See Lambert v. Kysar*, 983 F.2d 1110 (1st Cir.1993); *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762 (9th Cir.1989). Clearly, the forum selection clause may be enforced as a matter of federal common law. *Lambert*, 983 F.2d at 1113.

■ Contrary to what Defendants seem to suggest, however, a forum selection clause, in general, does not "oust the jurisdiction of the courts; in effect it merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise jurisdiction." *LFC Lessors, Inc. v. Pacific Sewer Maintenance*, 739 F.2d 4, 6 (1st Cir.1984). To argue that the forum selection clause deprives the federal district court in Puerto Rico of jurisdiction is an erroneous attempt to restrict a federal court's jurisdiction. Article III of the United States Constitution provides that "[t]he judicial power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." In its first session, Congress adopted the Judiciary Act of 1789 creating lower federal courts and defining their jurisdiction. Erwin Chemerinsky, *Federal Jurisdiction* 8–11 (Little Brown and Company, 2nd ed., 1994). Only the U.S. Congress, through its constitutionally granted authority, may define, expand or limit the jurisdiction of the federal courts located throughout the U.S. and its territories. Presently, the Court maintains diversity jurisdiction over the dispute because both the citizenship and amount in controversy requirements are satisfied.

The United States District Court for the District of Puerto Rico sits in Puerto Rico and exercises its judicial authority over disputes within the geographical borders of the island. As a commonwealth of the United States, Puerto Rico maintains both local and federal judicial systems. These systems are authorized by the commonwealth and federal governments respectively to act as the tribunals for dispute resolution. Accordingly, this Court may exercise jurisdiction over disputes involving matters within the island's coasts and abroad, if jurisdiction may be constitutionally extended.

The forum selection clause included in the Agreement is thus enforced by the courts solely as a matter of public policy. In the interests of economic prosperity, the federal courts have decided not to exercise jurisdiction when forum selection clauses with appropriate language are included in contracts. *The Bremen*, 407 U.S. at 10, 92 S.Ct. at 1913; *see also LFC Lessors*, 739 F.2d at 6–7. The issue to be addressed by this Court, then, is not the enforceability of the forum selection clause, but the proper interpretation of its language.

■ To analyze this issue, the Court recognizes that the dispute arises under the Puerto Rico Dealer's Act which contains express public policy protections for dealers against nonresident principals. The forum selection clause, therefore, must be scrutinized with respect to (1) the intentions of the Puerto Rican legislature as expressed through Act 75, and (2) the intentions of the parties as demonstrated through the "forum selection" and "conformity with local laws" clauses of the Agreement.

## 1. Law 75 Policy

Act 75 states:

Any stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set

forth by this chapter and is therefore null and void.

P.R. Laws Ann. title 10, § 278(b)(2) (1991).

Act 75 sets forth, in no uncertain terms, the Puerto Rican legislature's intent that disputes between dealers and principals be heard by courts within the Commonwealth of Puerto Rico. In the interest of protecting the entrepreneurial efforts of Puerto Rican businesses, disputes arising out of distributorship contracts are better handled under Puerto Rico law by courts within the Commonwealth. Act 75 provides that claims be adjudicated by the courts of the Commonwealth even in the absence or presence of a contract clause between the nonresident principal and the dealer stipulating where controversies would be settled. The United States District Court for the District of Puerto Rico sitting in diversity acts as a commonwealth court for the purposes of applying state law to substantive legal issues in the present dispute.

In the instant case, the agreement contains no language requiring resolution of disputes to be outside of Puerto Rico. The "governing law" and "conformity with local laws" clauses ensure that the contract does not contravene the public policy expressed through Act 75. The provisions indicate the parties intended the agreement to be fully enforceable by all applicable laws of the governments having jurisdiction over them.

In accordance with the intentions of Act 75, federal courts (applying Puerto Rico law) are courts of and within the Commonwealth and may exercise jurisdiction over matters arising out of disputes involving the Dealer's Act.

### 2. Intentions of the Parties

■ Next, the Court turns to the issue of whether to exercise jurisdiction over the dispute in light of the parties' intended effect of the forum selection clause. "In Puerto Rico once a contract has been 'perfected,' the parties are to abide in good faith by its terms. The fulfillment of an obligation can not be left to the whim of one party. A valid contract has the force of law. Thus a contract will be enforced unless it is contrary to law, morals, or public policy." *Grissom v. Colotti*, 644 F.Supp. 903, 905 (D.P.R.1986) (citations omitted). The agreement at bar was entered into by seasoned businesspeople bargaining in good faith through experienced counsel at arm's length for the execution of a mutually beneficial distribution contract. The contract appears to be neither adhesive nor the result of fraud or coercion. Therefore, it can be expected that both parties could anticipate being haled into court within a tribunal having jurisdiction over the Commonwealth of Puerto Rico; this includes local and federal courts enforcing the forum selection clause.

"Instead we are confronted here with a negotiated contract provision subject to opposing, yet reasonable interpretations." *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955 (5th Cir.1974). In such situations, Articles 1233 and 1234 of the Civil Code of Puerto Rico indicate that the intentions of the parties must be determined. The manner in which the negotiations were conducted should be reconstructed to exhibit the intentions of the parties. *Unisys Puerto Rico, Inc. v. Ramallo Brothers Printing,* 128 D.P.R.41(1991). The court in *Keaty,* 503 F.2d at 957, adopted the traditional rule whereby an "interpretation is preferred which operates more strongly against the party from whom (the words) proceed." Finding that the contract was perfected and entered into by both parties in good faith and without adhesion, a chronological investigation into the negotiation process suggests that the first official draft of the contract was made by Defendant TACP and included a forum selection clause stipulating New York State as the forum for dispute resolution. Defendant, thus, intimates its intention to agree to the ramifications of such a provision. Furthermore, the negotiations between the parties included multiple: revisions of the distribution Agreement. Plaintiff's letter dated December 8, 1993 only requested certain revisions be made to the proposed contract which resulted in the change in the dispute resolution forum from New York State to Puerto Rico.

The language of the clause was ambiguous because it failed to specify which courts in Puerto Rico would have exclusive jurisdiction. The Court's interpretation of the language in the Agreement's forum selection

clause "... to the jurisdiction of the courts of the Commonwealth of Puerto Rico," is that it includes the District Court as a forum for hearing controversies arising under the Agreement. *But see Bristol Babcock, Inc. v. Puerto Rico Electric Power Authority*, 930 F.Supp. 710 (D.P.R.1996) (Fusté, J.) (interpreting similar clause to exclude federal courts).[2]

Moreover, to designate an exclusive forum for litigation, the forum selection clause must be mandatory. A mandatory clause is a contractual provision whereby parties agree to a preselected forum and assign that forum exclusive jurisdiction over all disputes arising out of the contract. The language of the clause must expressly indicate that the stipulated forum is the only tribunal that may hear a claim.

Contracts containing permissive forum selection clauses act to confer jurisdiction in a forum over disputes arising out of a contract. These clauses do not include exclusionary language that designates a specific forum to settle claims. Therefore, the stipulated tribunal is not the only court that may hear a claim.

If the clause had preselected an exclusive forum for hearing disputes, it would have been considered mandatory. *Credit Alliance Corp. v. Crook*, 567 F.Supp. 1462, 1465 (S.D.N.Y.1983); *see also Full–Sight Contact Lens Corp. v. Soft Lenses, Inc.*, 466 F.Supp. 71, 72–3 n. 3 (S.D.N.Y.1978) (plaintiff was barred from asserting its own convenience in opposing a transfer since it had contractually agreed "that any suit shall be brought in either San Diego or Los Angeles County."). The language in the *Full–Sight* clause indicated the exclusive or the only appropriate

forum where the case must be heard and acted to exclude other fora with jurisdiction.

The forum selection clause in the Agreement states that the parties "voluntarily submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico." The language suggests a permissive, not a mandatory, forum selection clause because it simply confers jurisdiction in one forum—the Commonwealth of Puerto Rico—and does not contain specific language of exclusion.[3] *Cummings v. Caribe Marketing & Sales Co., Inc.*, 959 F.Supp. 560, 565 (D.P.R.1997). As such, a superior or district court having jurisdiction over the merits of the dispute is competent to hear the case. The United States District Court for Puerto Rico, sitting in the Commonwealth, exercising jurisdiction over disputes involving federal questions and diversity, and applying Puerto Rico law appropriately, is competent to adjudicate this contractual dispute. By the authority granted the lower courts from the U.S. Congress, this court makes no stretch to exercise its jurisdiction over the case at bar, particularly in light of the permissive forum selection clause in the distribution contract.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (**Dkt No. 3**) the claims against TAI is **GRANTED** for want of personal jurisdiction; it is, however, **DENIED** with regard to the claims against TACP.

**IT IS SO ORDERED.**

---

2.  *LFC Lessors*, on which Defendants rely, is distinguishable from the instant case in two ways. First, the forum selection clause at issue there included the word "shall," which is absent from the clause currently under consideration. See discussion of mandatory versus permissive forum selection clauses, infra. Second, the court in that case relied on the fact that the clause used parallel structures, and it specifically distinguished a hypothetical passage that did not include parallel structures. *LFC Lessors*, 739 F.2d at 7. Rather than be a "syntactic dilemma not pertinent here," (Defs. Mem. Law. at 7), the court's reliance on the parallel structures distin-

guishes this case from that one. The clause currently before the Court does not make use of parallel structures; it uses separate sentences.

3.  Courts are hesitant to enforce forum selection clauses unless it is clear and provided in unambiguous terms that the parties intent is for controversies to be litigated exclusively in a particular forum. *Cummings v. Caribe Marketing & Sales Co., Inc.*, 959 F.Supp. 560, 565 (D.P.R. 1997). The present clause does not contain language such as "shall" or "exclusively," which are mandatory terms and act to dictate the forum.